Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9236 | **DATE** | 10/30/2002 |
| **CASE TITLE** | Carl Kortum vs. Raffles Holdings, Ltd. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Leave to File First Amended Complaint and to Remand this Matter to State Court

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum, Plaintiff's Motion for Leave to File First Amended Complaint, and to Remand this Matter to State Court (Doc #16) is granted. The Clerk of the Court is directed to remand this case to State Court. Defendant's Motion to Compel Plaintiff to Appear in Person for Deposition (Doc #18), Plaintiff's Motion to Compel Defendant to produce items from the privilege log (Doc #10), Plaintiff's Motion for a Protective Order (Doc #15), and Plaintiff's Second Motion to Compel and for Sanctions (filed October 24, 2002) are all denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 3 1 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 24 |
| | Copy to judge/magistrate judge. | | |
| jar/lc | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARL KORTUM | ) |
| | ) No. 01 C 9236 |
| Plaintiff, | ) |
| | ) HONORABLE DAVID H. COAR |
| v. | ) |
| | ) |
| RAFFLES HOLDINGS LIMITED, | ) |
| | ) |
| | ) |
| Defendants. | ) |

DOCKETED
OCT 31 2002

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Motion for Leave to File First Amended Complaint and To Remand This Matter to State Court. For the reasons stated in this opinion, Plaintiff's Motion for Leave to File an Amended Complaint and To Remand This Matter to State Court is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Carl Kortum ("Kortum" or "Plaintiff") worked for Swissotel Management (U.S.A.), L.L.C., as Vice-President for Development for The Americas. In April 2001, Swissotel entered into a Stock Purchase and Sale Agreement with Defendant Raffles Holdings Limited ("Defendant" or "Raffles"). According to the Defendant, the agreement was final as of June 1, 2001. (Def. Ans. ¶ 9) The agreement established the terms of the sale of Swissotel to Raffles.

Plaintiff's employment contract established that his base salary would be $260,000 and he would additionally receive a significant performance-related bonus that could exceed 30 percent

1



of the base salary.[1] In addition to the employment contract, Kortum entered into a Loyalty Retention Agreement with his employer. The agreement provided him with incentives to remain with the corporation. If Plaintiff were still an employee on September 30, 2001, he would receive financial compensation equal to the sum of his base salary and the average annual bonus from the previous three years as a loyalty bonus.

Unless Plaintiff was terminated for cause, the employment contract and the loyalty retention agreements (together the "employment contracts") entitled him to the listed compensation. Both agreements defined "cause" for termination in identical terms. The employment contracts establish the following grounds for termination with cause:

(i) commission by the Executive of a felony or of any criminal act involving moral turpitude which results in an arrest or indictment;
(ii) deliberate and continual refusal to perform employment duties reasonably requested by the Company or an affiliate after 20 days' written notice, by certified mail, of such failure to perform, specifying that the failure constitutes Cause (other than as a result of vacation, sickness, illness, or injury);
(iii) fraud or embezzlement determined in accordance with the Company's normal, internal investigative procedures consistently applied in comparable circumstances to all employees;
(iv) gross misconduct or gross negligence in connection with the business of the company or an affiliate, which has substantial effect on the Company or the affiliate. (Loyalty Retention Agreement, ¶ 3, Pl.'s Comp. Ex. A; Employment Agreement, ¶ 5(c), Pl.'s Comp. Ex. D)

Plaintiff received a letter dated August 30, 2001 from Thomas Klein, Raffles' Senior Vice President for North America, notifying him that his "employment with Swissotel Management (USA), L.L.C. is being terminated with cause, effective August 31, 2001." (Pl.'s Comp., Ex. C) The letter offered no additional explanation for Kortum's termination.

---

[1] The formula for calculating the bonus amount is a critical component of this litigation. The Court makes no finding about what the actual bonus amount should be, nor about the correct formula for calculating the bonus amounts.

On October 18, 2001, Plaintiff filed a five count complaint against Defendant in Illinois state court. Counts I and II of the complaint allege that the firing was without cause, therefore Plaintiff was entitled to his loyalty bonus under the loyalty retention agreement.[2] Count III of the complaint alleges that the firing was without cause, therefore Plaintiff was entitled to six months severance pay under the employment contract. Count IV of the complaint sought an order requiring Defendant to pay a bonus that Plaintiff alleges he previously earned in Fiscal Year 1998. Count V of the complaint alleges that Defendant breached a long-term incentive plan when it failed to pay plaintiff a bonus he earned under that plan.

On December 3, 2001, the Defendant removed the action to federal court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446. Jurisdiction was proper in this Court because the parties were of diverse citizenship: Plaintiff is a citizen of Illinois and Defendant is a citizen of the foreign nation of Singapore. On December 10, 2001, the Defendant answered Plaintiff's complaint in this Court.

In March 2002, this Court held a scheduling conference pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. Pursuant to the conference, the Court set the schedule for this litigation. The schedule established, in pertinent part, that all amendments to pleadings would be filed by June 7, 2002, and fact discovery would be closed on October 11, 2002. The trial date was set for March 31, 2003.

---

[2]Count I of the complaint alleges that Plaintiff was entitled to the loyalty bonus because the termination "for cause" was without cause and in violation of the implied covenant of good faith in all contracts. Count II of the complaint alleges that Plaintiff was entitled to the loyalty bonus because the termination for cause was without cause and in violation of a separate clause of the loyalty retention agreement (Loyalty Retention Agreement ¶ 4) that established Plaintiff's right to recover the loyalty bonus if he was fired without cause within two years of a change in control of the corporation. Both seek identical relief, though the theories are slightly different.

On September 30, 2002, Plaintiff deposed Thomas Klein, the witness Defendant designated to speak for the corporation pursuant to Federal Rule of Civil Procedure 30(b)(6). In that deposition, for the first time Defendant affirmatively represented that it did not assume the obligations of Plaintiff's employment contracts when it effectuated the purchase of Plaintiff's employer.[3] Previously, in response to Plaintiff's allegation that the Stock Purchase and Sale Agreement transferred the obligation to Defendant, Defendant answered that the "agreement speaks for itself." Upon being made aware of Defendant's position, Plaintiff sought a complete copy of the Stock Purchase and Sale Agreement, which he had not received by October 8, 2002.[4] On October 11, 2002, Plaintiff filed his Motion for Leave to File a First Amended Complaint and to Remand this Matter to State Court.

---

[3] The following pertinent excerpt from the deposition sets forth Defendant's position:
Q: [I]s it Raffles' contention that they have not assumed the obligations (under the employment contracts)?
A: That's correct...
Q: What is Raffles' contention as to who is responsible for the obligations of Swissotel Management Corporation under the Loyalty Retention Agreement?
A: It would be the company that that agreement was entered into. In this instance it would be – the loyalty retention agreement I think was with SMUSA [Swissotel Management U.S.A.]. I'm sorry, I stand corrected. SMC, Swissotel Management Corporation.
       \*   \*   \*
Q: What is Raffles' Contention as to who or what entity does have any obligations under the [employment contract]?
A: Swissotel Management Corporation.
(Pl.'s Motion for Leave to File First Am. Comp., Ex. 5, at 12–13, 29)

[4] Defendant, in its answer to Plaintiff's First set of Interrogatories (filed on July 27, 2002), noted that it would produce "the relevant portions of the Stock Purchase and Sale Agreement ... with relevant schedules. Those documents... speak for themselves." (Ans. to Pl.'s First Set of Interrogatories, at 7). On October 2, 2002, the parties agreed to enter a protective order that partially resolved a dispute about the confidentiality of the Stock Purchase and Sale Agreement. Whether the relevant portions have been produced to date is an unresolved dispute between the parties, upon which the Court makes no judgment.

## DISCUSSION

In his amended complaint, Plaintiff seeks to add as defendant-parties Swissotel Management Corporation, Swissotel Management USA, L.L.C., and Swissotel Holding A.G. as defendants. The substance of the allegations in the amended complaint is identical to the original complaint; it merely adds additional defendants to the litigation. If the Court permits the amendment, both parties agree that it would defeat the jurisdiction of this Court, as at least one of the additional defendants is a citizen of Illinois. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); Indiana Gas Co., Inc. v. Home Ins. Co., 141 F.3d 314, 316 (7th Cir. 1998) ("complete diversity ... under Strawbridge v. Curtiss ... is essential") (citation omitted).

Ordinarily, requests to amend pleadings are evaluated under Rule 15 of the Federal Rule of Civil Procedure. Rule 15(a) establishes a fairly permissive standard for amendments. See Fed. R. Civ. Pro. 15(a) ("leave shall be freely given when justice so requires"). When a request for amendment would require alteration to a Rule 16(b) scheduling order (as it would in this case), the moving party must overcome the presumption against modification through "a showing of good cause." See Fed. R. Civ. Pro. 16(b) ("A schedule shall not be modified except upon a showing of good cause and by leave of the district judge ...."). Defendant, in its response to Plaintiff's motion, represents that Plaintiff has not demonstrated "good cause."

In their pleadings, neither party recognized that amendments that destroy diversity are not analyzed under Rule 15 or Rule 16, but under the joinder framework of 28 U.S.C. § 1447(e). See Mayes v. Rapaport, 198 F.3d 457, 462 (4th Cir. 1999); In re Bridgestone/Firestone, Inc., 129 F. Supp. 2d 1202, 1204 (S.D. Ind. 2001). The text of the statute allows that "the court may deny joinder or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e); see also

Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1486 (7th Cir. 1996) ("when a plaintiff seeks to join a non-diverse party, the court may either deny joinder or permit joinder and remand the entire action to state court"). If the Court does permit joinder, the Court must remand the matter to the State court. See 28 U.S.C. § 1447(e); Jass, 88 F.3d at 1486.

Whether to permit joinder and remand the action to State court is based on equitable considerations. Although the Seventh Circuit has yet to enumerate factors to consider in making this equitable calculation, other district courts in this circuit have relied upon the following four factors: (1) plaintiff's motivation in seeking to join the parties, particularly whether joinder is sought solely to defeat federal jurisdiction; (2) timeliness of the request; (3) prejudice to the parties flowing from the motion; and (4) other equitable considerations, including Defendant's interest in maintaining federal forum. See In re Bridgestone/Firestone, Inc., 129 F. Supp. 2d 1202, 1204 (S.D. Ind. 2001); Land v. Yamaha Motor Corp., U.S.A., No. IP 00-220-CH/G, 2000 WL 33226317, at *2 (S.D. Ind. Dec. 20, 2000) (citing Mammano v. American Honda Motor Co., 941 F. SUPP. 323, 325 (W.D.N.Y. 1996)); Goutanis v. Mutual Group (US), No. 92 C 1689, 1995 WL 86588, at *6 (N.D. Ill. Feb. 24, 1995); Vasilakos v. Corometrics Medical Systems, Inc., No. 93 C 5343, 1993 WL 390283, at *3-*4 (N.D. Ill. Sept. 30, 1993). The decision is committed to the discretion of the trial court. The Court will now analyze these four factors in this case.

### A. Plaintiff's Motivation for Joining the Parties

Where removal is permissible, the defendant possesses an important statutory right to transfer the case to a federal forum. Plaintiffs cannot defeat that right because they would rather litigate in state court. See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294 (1938) ("plaintiff ought not to be able to defeat that right [of removal] and bring the cause back

to state court at his election"). Plaintiff cannot seek to join non-diverse parties solely to defeat federal jurisdiction.

The Court finds that Plaintiff's action is not motivated by a desire to defeat federal jurisdiction. Had Plaintiff desired to defeat federal jurisdiction, it would have been a matter of little consequence for him to amend his complaint to add these parties sooner. Plaintiff could have sought their joinder within days of the removal to federal court, had defeating jurisdiction been among his motivations. Instead, Plaintiff maintained the lawsuit against the only party he believed was a proper defendant in this action.

Plaintiff represents that its sole motivation for adding the additional defendants to this litigation is to ensure that the matter can be fully and fairly litigated. As soon as he became aware of defendant's position that it did not assume the obligations under the employment contract, he moved to amend his complaint to add the other potentially responsible parties as defendants. If Plaintiff were merely seeking to defeat federal jurisdiction, the request to amend the complaint need not have been so long delayed.

B.  **Timeliness of Plaintiff's Request**

Coming after the deadline for amendments and exactly at the deadline for the close of fact discovery, Plaintiff's request for leave to amend his complaint was filed rather late. Ordinarily, this Court frowns upon attempts to amend pleadings after the deadline for amendments. The Court's dissatisfaction often intensifies when the motions for leave to amend are filed simultaneously with the end of fact discovery. Absent a compelling reason to grant leave to amend under these circumstances, the Court would prefer to adhere to the scheduling order entered pursuant to Rule 16(b).

7

Here, the Plaintiff has presented a compelling case in support of his motion for leave to file an amended complaint. Prior to deposing the Defendant's witness on September 30, 2002, Plaintiff was operating under the belief that Defendant had assumed the obligations of its predecessor under the employment contract. Plaintiff's belief was reasonable based upon Defendant's conduct prior to September 30.

First, Plaintiff's written notice of termination was printed on Raffles' letterhead and it was signed by the person who became the designated witness for Raffles in this litigation, Thomas Klein. Plaintiff reasonably believed that the entity empowered to terminate his employment contract was also the entity that accepted the obligations under the employment contract.

Second, the Defendant's Answer neither admitted nor denied Plaintiff's allegation that it assumed the obligations of the employment contracts in the Stock Purchase and Sale Agreement that effectuated the sale of the Swissotel group of companies to Raffles. Instead, it asserted that the agreements "speak for themselves." (Def. Ans. at 4 (Ans. to ¶ 12)) This is a common pleading device that most likely originates from the evidentiary rules governing admission of documents and testimony about documents, where the document is always the best evidence of its contents. See Fed. R. Evid. 1002; Fed. R. Evid. 1004. Defendant's answer ignores the difference between the pleading rules and the evidence rules. Unlike the evidence rules, the pleading rules are intended to expose the pertinent issues in the litigation at the earliest possible stage, so the parties can focus on the actual substance of the dispute as soon as practically possible. See Fed. R. Civ. Pro. 1. Rule 8(b) of the Federal Rules of Civil Procedure gives parties three pleading options in the answer: to admit the allegation, to deny the allegation, or to state

that the party lacks knowledge or information sufficient to form a belief as to the truth of the allegation. Responding that the documents "speak for themselves" accomplish none of the above, particularly where, as here, the documents are in the exclusive possession of the Defendant. The Court joins in Judge Shadur's frequent lament regarding documents that "speak for themselves." See Chicago District Council of Carpenters Pension Fund v. Balmoral Racing Club, Inc., No. 00 C 2375, 2000 WL 876921, at *1 (N.D. Ill. June 26, 2000) ("This Court has been attempting to listen to such written materials for years (in the forlorn hope that one will indeed give voice) – but until some such writing does break its silence, this Court will continue to require pleaders to employ one of the only three alternatives that *are* permitted by Rule 8(b) ....").

What is more troubling still is Raffles' failure to produce the relevant provisions of the Stock Purchase and Sale Agreement pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. Rule 26(a)(1) requires that parties "must provide to other parties . . . a copy of, or a description by category and location of, all documents . . .that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses . . . ." This Court ordered that Rule 26(a)(1) disclosures be made on or before March 22, 2002. Under Plaintiff's theory of the case, he signed the employment contracts with the Swissotel companies and the contracts were breached. He filed the action against Raffles because he believed that Raffles assumed the obligations under the employment contracts when it purchased Swissotel. In the September 30 deposition, but not before, Raffles made it abundantly clear that it intended to claim it had not assumed the obligations under the employment contracts based upon relevant provisions of the Stock Purchase and Sale Agreement. Under these circumstances, Rule 26(a)(1)

9

*clearly* required disclosure of the Stock Purchase and Sale Agreement much earlier in the litigation. Instead of disclosing the agreement when the rules required (by March 22, 2002), Raffles withheld the central support for its defense in an effort to spring an illegal trap. This conduct deprives Raffles and its attorneys of any claim to consideration by this Court.

If the Defendant had denied that it assumed the obligations under Plaintiff's employment contracts in its *answer*, instead of ten months later in its deposition, Plaintiff could have amended his complaint much sooner. If the Defendant had disclosed the relevant provisions of the agreement purportedly establishing the defense in *March*, as the rules required, instead of the end of September, Plaintiff could have amended his complaint much sooner. Here, Plaintiff learned of Defendant's position in the deposition on September 30, 2002. Thereafter, Plaintiff quickly sought leave to amend his complaint to add the additional parties, filing the current motion on October 11, 2002. In these circumstances, the Defendant's non-compliance with the obligations of the Federal Rules of Civil Procedure is the primary cause of the delay.

C.     **Prejudice to the Parties Flowing From the Motion**

If the Court does not grant Plaintiff's Motion, Plaintiff would likely have to bring simultaneous lawsuits in state and federal court, actions that would be litigating identical issues. Such duplicate litigation serves neither the parties nor the court system well. As for the Defendant, it does not demonstrate any prejudice flowing from this motion in its response. Admittedly, Defendant's response analyzed the issue under the wrong legal framework (Rule 16 of the Federal Rules of Civil Procedure instead of 28 U.S.C. § 1447(e)), but Rule 16 can and does consider prejudice as part of its "good cause" analysis. The only specific mention of prejudice in Defendant's submission is to say that it need not be shown "if 'good cause' is not

10

demonstrated." (Def. Resp. to Pl.'s Mot. for Leave, at 3 (citing Tschantz v. McCann, 160 F.R.D. 568, 572 (N.D. Ind. 1995))

Defendant does mention that the trial date in this litigation is scheduled in approximately five months. The addition of three defendants could delay the resolution of this matter, which would add expense and time to Defendant's obligations. The Court construes that as an assertion of prejudice. In this case, though, the Court is not convinced that the delay would be substantial. The defendants Plaintiff seeks to add to the complaint are closely related to Raffles. In addition to being Senior Vice-President of North America for Raffles, Raffle's 30(b)(6) witness, Thomas Klein, is also the President of Swissotel Management (U.S.A.), L.L.C. and Swissotel Management Corporation, two of the three additional defendants. (Pl.'s Motion for Leave to File First Am. Comp., Ex. 5, at 26). Despite his senior status within Raffles and Swissotel Management (USA), L.L.C., Mr. Klein testified that he doesn't know the actual relationship between the two organizations. (Pl.'s Motion for Leave to File First Am. Comp., Ex. 5, at 10). It is clear, though, that the companies are closely related. Under these circumstances, it seems unlikely that the three Swissotel defendants would be caught completely unaware if they were added as defendants to this litigation. This makes it more likely that the proceeding could proceed to a speedy and just resolution, diminishing the potential for prejudice to Raffles from granting the Plaintiff's motion.

### D. Other Equitable Considerations

In this case, Raffles does have a fairly strong interest in maintaining a federal forum. It can be more burdensome for foreign nationals to bounce between jurisdictions than it would be for a citizen of the United States. Raffles has retained a leading Chicago law firm, Freeborn &

Peters, to represent it in this matter. The Court is confident that Defendant's counsel will minimize the disruption and prejudice that could emerge from the action being remanded to state court. Raffles' interest in the federal forum, though strong, does not outweigh the prejudice to the Plaintiff from failing to grant this motion.

Finally, the precise corporate structure and relationship among the companies of the Swissotel group and Raffles is not at all clear. The Senior Vice-President of Raffles admitted that he did not know the exact relationship between the companies, and he is also the President of two of the Swissotel companies. Defendant's position now is that because Plaintiff did not know or anticipate the vagaries of the corporate structures, he should be stuck with the parties named in his original complaint. Admittedly, Plaintiff could have filed suit against all of these defendants in his original complaint. Instead, he filed suit against the only defendant he believed was liable. When the structure is as difficult to understand as Raffles/Swissotel apparently is, the Court finds it difficult to fault Plaintiff for failing to include more defendants in the original complaint. Plaintiff's diligence in amending the complaint after Raffles belatedly reveals its theory is an equitable consideration in his favor.

## CONCLUSION

For the reasons stated in this opinion, the Court grants Plaintiff's Motion for Leave to File a First Amended Complaint. The Amended Complaint adds parties that will destroy the diversity of citizenship between the Plaintiff and Defendants in this lawsuit. Consequently, the Court must grant Plaintiff's Motion to Remand this Matter to State Court for further proceedings.

**Enter:**

_____
**David H. Coar**
**United States District Judge**

**Dated: October 30, 2002**